Exhibit A

IN THE IOWA DISTRICT COURT FOR UNION COUNTY

| | |
|---|---|
| SUANNE PETERSON,<br><br>Plaintiff,<br><br>vs.<br><br>CARE INITIATIVES, SUSAN O'BRIEN, and KARMA GREEN,<br><br>Defendants. | Case No. LACV017363<br><br><br>PETITION<br>AND<br>JURY DEMAND |

COMES NOW the Plaintiff, by and through her attorneys, and for her cause of action hereby states the following:

## INTRODUCTION

1. This is an action under the Americans with Disabilities Act, the Iowa Civil Rights Act, and the Family Medical Leave Act, challenging the illegal employment practices directed at Plaintiff by the Defendants.

2. Plaintiff Suanne Peterson is a resident of Union County, Iowa.

3. Defendant Care Initiatives is a Texas corporation doing business in Union County, Iowa.

4. Defendant Susan O'Brien is a resident of Union County, Iowa.

5. Defendant Karma Green is a resident of Adams County, Iowa.

6. The acts of which Plaintiff complains occurred in Union County, Iowa.

## PROCEDURAL REQUIREMENTS

7. On approximately May 29, 2012, Plaintiff filed a civil rights complaint against Defendants with the Iowa Civil Rights Commission which was cross-filed with the Equal Employment Opportunity Commission.

1

8. On approximately April 2, 2013, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued an Administrative Release with respect to Plaintiff's charges against Defendants.

9. On approximately June 11, 2013, less than 90 days prior to the filing of this Petition, the Equal Employment Opportunity Commission issued a right to sue letter with respect to Plaintiff's charges against Defendants.

### FACTUAL BACKGROUND

10. Defendant Care Initiatives owns and operates Creston Nursing & Rehab Center ("CNRC"), a nursing facility located in Creston, Union County, Iowa.

11. On August 2, 2000, Defendant Care Initiatives hired Plaintiff to work as a full-time Certified Nurse Aide (CNA) at CNRC.

12. Plaintiff worked as a full-time CNA at CNRC until September 24, 2001.

13. On February 17, 2002, Plaintiff was rehired by Care Initiatives to work as a part-time CNA at CNRC.

14. Defendant Susan O'Brien, the Assistant Director of Nursing at CNRC at all times material hereto, had supervisory authority over Plaintiff.

15. Defendant Karma Green, the Director of Nursing at CNRC at all times material hereto, had supervisory authority over Plaintiff.

16. Plaintiff has suffered from depression and anxiety since approximately 2007.

17. Defendants knew that Plaintiff suffered from depression and anxiety.

18. Defendant Care Initiatives adopted an attendance policy at CNRC that allowed employees six "unscheduled absences" in a 12-month period. The policy

2

considers absences longer than one day to be a single "occurrence" when a doctor certifies they were caused by the same medical reason.

19. The attendance policy instituted progressive discipline for any unscheduled absence after the sixth one in a 12-month period, providing for a verbal warning, written warning, final warning, and termination of employment for the seventh, eighth, ninth, and tenth occurrences, respectively.

20. The attendance policy allowed employees to have one unscheduled absence removed from their 12-month total if they worked an extra shift at a supervisor's request.

21. On July 10, 2011, Plaintiff was hospitalized for depression and anxiety. Plaintiff notified CNRC of her hospitalization the same day.

22. Plaintiff was hospitalized for five days and then released to return to work on July 17, 2011. Plaintiff provided Defendants with a note from her physician, excusing her from work from July 10 through July 17, 2011.

23. Following this hospitalization, Plaintiff personally informed Defendants that she was hospitalized for depression and anxiety.

24. On July 26, 2011, Defendants issued Plaintiff a "Final Warning" for attendance. To reach the number of absences alleged in the Final Warning, Defendants included Plaintiff's period of hospitalization as an unscheduled absence.

25. Plaintiff routinely worked extra shifts to work off her absences.

26. Between July 2011 and March 2012, Plaintiff occasionally missed work because of her depression and anxiety. Defendants used these absences against Plaintiff.

3

27. On March 15, 2012, Plaintiff was again hospitalized because of her depression and anxiety.

28. On March 15, 2012, at approximately 12:35 p.m., Plaintiff's husband personally told Defendants that Plaintiff was hospitalized. He hand-delivered to Defendants a doctor's note excusing Plaintiff from work that day.

29. On March 15, 2012, at approximately 4:00 p.m., Defendants fired Plaintiff for "excessive absences."

30. Defendants held Plaintiff's absence on March 15 against her.

31. Plaintiff again informed Defendant Green that she was in the hospital, but Defendant Green said there was nothing she could do.

32. Defendants never asked Plaintiff to provide a medical certification for any of her absences.

33. Defendants never provided Plaintiff with a Notice of Eligibility or a Notice of Rights & Responsibilities.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## DISABILITY DISCRIMINATION & RETALIATION

34. Plaintiff repleads paragraphs 1 through 33 as if fully set forth herein.

35. Plaintiff's depression and anxiety substantially interfered with her major life activities of sleeping, thinking, concentrating, and communicating.

36. Plaintiff's depression and anxiety substantially interfered with the normal functioning of her brain, including but not limited to regulation of her serotonin levels.

37. Plaintiff was nevertheless able to perform the essential functions of her job with or without reasonable accommodation.

38.     Plaintiff repeatedly communicated to Defendants her need for the reasonable accommodation of occasional leave from work for treatments and recovery related to her disability.

39.     Defendants failed to accommodate Plaintiff's disability in violation of the ADA.

40.     Defendants failed to engage with Plaintiff in an interactive process to determine appropriate reasonable accommodations.

41.     Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment.

42.     Plaintiff's disability and her requests for reasonable accommodations were motivating factors in the discrimination perpetrated against her.

43.     As a result of Defendants' illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to mental and emotional distress, fear, anguish, humiliation, intimidation, embarrassment, lost enjoyment of life, medical expenses, lost wages, benefits, future earnings, and other emoluments of employment.

44.     Defendants acted with malice or reckless indifference toward Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount that will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendants and to deter them and others; for prejudgment and postjudgment interest, for attorney's fees and expenses, for the costs of this action, for appropriate equitable and injunctive relief, and

for such other relief as may be just in the circumstances and consistent with the purposes of the Americans with Disabilities Act.

## COUNT II
### VIOLATION OF THE IOWA CIVIL RIGHTS ACT
### DISABILITY DISCRIMINATION & RETALIATION

45. Plaintiff repleads paragraphs 1 through 44 as if fully set forth herein.

46. Plaintiff's depression and anxiety was a disability within the meaning of the Iowa Civil Rights Act.

47. Plaintiff was nevertheless able to perform the essential functions of her job with or without reasonable accommodation.

48. Defendants failed to accommodate Plaintiff's disability in violation of the Iowa Civil Rights Act.

49. Defendants failed to engage with Plaintiff in an interactive process to determine appropriate reasonable accommodations.

50. Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment in violation of the Iowa Civil Rights Act.

51. Plaintiff's disability and her requests for reasonable accommodations were motivating factors in the discrimination perpetrated against her.

52. As a result of Defendants' illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to mental and emotional distress, fear, anguish, humiliation, intimidation, embarrassment, lost enjoyment of life, medical expenses, lost wages, benefits, future earnings, and other emoluments of employment.

6

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount that will fully and fairly compensate her for her injuries and damages, for prejudgment and postjudgment interest, for attorney's fees and expenses, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of the Iowa Civil Rights Act.

## COUNT III
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

53. Plaintiff repleads paragraphs 1 through 52 as if fully set forth herein.

54. At all times material to this case, Defendants were "employers" within the meaning of the Family Medical Leave Act.

55. In the alternative, Defendants are estopped from claiming they are not "employers" within the meaning of the FMLA, as they claim to be "employers" under the FMLA and provide their employees with information regarding their rights under the FMLA in their employee handbook.

56. Plaintiff was an "eligible employee" within the meaning of the FMLA.

57. Since at least 2007, Plaintiff has suffered from depression and anxiety, which constitute a "serious health condition" within the meaning of the FMLA.

58. Plaintiff was entitled to protected leave under the FMLA.

59. Defendants interfered with Plaintiff's right to take leave under the FMLA.

60. Defendants failed to restore Plaintiff to the position she held when her leave commenced.

7

61. Defendants failed to restore Plaintiff to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment as the position she held when her leave commenced.

62. Defendants discriminated and retaliated against Plaintiff for exercising her rights under the FMLA.

63. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including but not limited to back pay, front pay, and employment benefits.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount that will fully and fairly compensate her for her injuries and damages, for liquidated damages, for prejudgment and postjudgment interest, for attorney's fees and expenses, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of the Family Medical Leave Act.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury.

FIEDLER & TIMMER, P.L.L.C.

Brooke Timmer AT0008821
brooke@employmentlawiowa.com
Emily McCarty AT0010147
emily@employmentlawiowa.com
2900 – 100th Street, Suite 209
Urbandale, IA 50322
Telephone: (515) 254-1999
Fax: (515) 254-9923
ATTORNEYS FOR PLAINTIFF